UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MOLLY C.,

           Plaintiff,

     v.                              **DECISION AND ORDER**
                                        20-CV-1376S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Molly C.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed her application for benefits under Title XVI of the Act on January 11, 2016. (R.[2] at 111.) Plaintiff alleged disability beginning on December 12, 2012, due to anxiety, ADHD, depression, bipolar, and personality disorder. (R. at 112.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). After two hearings were adjourned due to circumstances outside Plaintiff's control, ALJ Bryce Baird held a hearing on September 11, 2019, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 27-68.) Medical expert Neli Cohen, Psy.D., and vocational expert Christina Boardman also testified at the

_____

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

hearing. (R. at 27.) At the time of the hearing, Plaintiff was 22 years old, with a twelfth-grade education and no past work experience. (R. at 61-62.)

3.      The ALJ considered the case de novo and, on October 2, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 10-18.) On August 4, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on September 26, 2020, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 15.) Plaintiff filed a response on February 24, 2022 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's October 2, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date of January 11, 2016. (R. at 12.)  At step two, the ALJ

found that Plaintiff has the severe impairments of depression, anxiety, ADHD, bipolar, oppositional defiance disorder, and personality disorder. (Id.)

11.    The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 13.)

12.    Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> she is limited to simple routine tasks that can be learned after a short demonstration or within 30 days. She is limited to work that does not require more than simple work related decisions, and work that does not require her to independently develop work strategies or identify work-place needs. She is limited to work that does not require travel to unfamiliar places, work in which there would be no more than superficial interaction with the public, and no more than occasional interaction with coworkers. She is limited to work that allows an individual to be off task 10% of the workday, in additional to regularly scheduled breaks; and work that does not require teamwork, such as on a production line. She is limited to work that requires doing the same tasks every day with little variation in location, hour, or tasks, and work that is subject to no more than occasional supervision.

(R. at 15.)

13.    At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 17.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 18.)

14.     Plaintiff argues that the ALJ improperly evaluated the opinion evidence of record, failed to account for Plaintiff's stress-related limitations, and found that Plaintiff would be off-task 10% of the time without any basis in the record. Defendant argues that the ALJ's RFC is supported by substantial evidence.

15.     Plaintiff first argues that the ALJ improperly found that she could have "no more than occasional supervision" after giving substantial weight to the opinions of Plaintiff's treating social worker and a consultative examiner that she was markedly or moderately to markedly limited in her ability to interact with supervisors. Plaintiff does not challenge the way the ALJ assigned weight to these opinions, but rather argues that the RFC the ALJ assigned to Plaintiff does not sufficiently account for her limitations. This Court finds, rather, that the limitation in the RFC is consistent with the opinions that Plaintiff was either markedly or moderately to markedly limited in her ability to interact with supervisors.

16.     Plaintiff experienced mental health challenges and problems interacting with others both before and during the period in question. In 2014, she was hospitalized after becoming aggressive toward her foster parents. (R. at 474.) She reported auditory hallucinations at one point, but later stated that she had fabricated that symptom. (R. at 1240, 1247.) She was transferred to the Western New York Child Psychiatric Center, and discharged in August 2014. (R. at 507.) She was admitted to the hospital again in October 2014. (R. at 604.)

17.     Plaintiff was involved in mental health court after she had an altercation with her mother. On February 18, 2016, Plaintiff had a "meltdown" outside the mental health court building. (R. at 535.) She was brought to the emergency room, and reported suicidal

6

ideation. (Id.) She had been noncompliant with her medications. (Id.) During 2016, Plaintiff participated in a mental health program. She had difficulty with compliance and was confrontational with others. (R. at 560.)

18.     On April 26, 2017, Plaintiff went to the emergency room after a suicide attempt. (R. at 635.)  On June 2, 2017, her mental health counselor Lisa Bonarigo noted that she was cheerful, had a cooperative attitude, and was looking for a job. (R. at 1534-35.) On June 28, 2017, Plaintiff was arrested for aggravated harassment. (R. at 1541.)

19.     In 2018, Plaintiff was prescribed Adderall and Xanax. (R. at 1625, 1891.) She reported in 2019 that these were the only medications that had ever helped her. (R. at 1905.) Bonarigo noted on February 6, 2019, that Plaintiff was "cheerful and talkative" and had not destroyed property or displayed physical aggression since the past summer. (R. at 1902.) On March 25, 2019, Bonarigo found Plaintiff in good spirits, and doing well overall. (R. at 1913.)

20.     The record contains several assessments of Plaintiff's mental functioning. On September 15, 2016, consultative examiner Adam Brownfeld, Ph.D., performed a psychiatric evaluation of Plaintiff. (R. at 619-22.) He opined that Plaintiff had no limitations in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks independently. (R. at 621.) He further opined that she was moderately to markedly limited in "maintaining an (sic) appropriate decisions, relating adequately with others, and appropriately dealing with stress." (Id.)

21.     The record contains another psychiatric evaluation, by Dr. Agnes Jonas, performed over two years later, on February 11, 2019. (R. at 1872-75.) Dr. Jonas opined

that Plaintiff had moderate limitations in using reason and judgment, interacting with supervisors, coworkers, and the public, regulating her emotions, controlling her behavior, and maintaining her well-being. (R. at 1875.)

22.    Plaintiff treated with social worker Lisa Bonarigo from 2017 to 2019. Bonarigo filled out a Medical Statement of Ability to Do Work-Related Activities on February 14, 2019. (R. at 1880-82.) She opined that Plaintiff had no limitations in her ability to understand, remember, and carry out simple and complex instructions. (R. at 1880.) She opined that Plaintiff had mild limitations in her ability to make judgments on simple and complex work-related decisions. (Id.) Bonarigo further opined that Plaintiff had moderate limitations in interacting appropriately with the public and co-workers, and marked limitations in interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. (R. at 1881.) Bonarigo explained that Plaintiff "struggles with authority figures and intrapersonal relationships which may impact interaction within the workplace. She also struggles with changes in routines and structure." (Id.) Regarding Plaintiff's ability to concentrate, Bonarigo stated that Plaintiff's "[a]bility to concentrate and stay on task can be impaired at times." (Id.)

23.    Dr. Neli Cohen testified at Plaintiff's hearing. She noted consistent improvement in Plaintiff's functioning from 2016 to 2019, with the exception of the suicide attempt in 2017. (R. at 42.) Dr. Cohen noted, however, that Plaintiff's symptoms related to that incident did not last for 12 months. Dr. Cohen opined that Plaintiff would have mild to moderate limitations in understanding and in interacting with others, and moderate

limitations in maintaining concentration and adapting and managing herself. (R. at 44-45.)

24.     The ALJ gave significant weight to the opinions of both Brownfeld, who opined that Plaintiff had moderate to marked limitations, and Bonarigo, who opined that Plaintiff had marked limitations, in interacting with supervisors. (R. at 16.) The ALJ also gave great weight to Dr. Cohen's opinion. (Id.) Plaintiff argues that the findings of marked, or moderate to marked, limitations in the ability to interact with supervisors are not adequately reflected in the RFC finding that Plaintiff could have "no more than occasional" supervision.

25.     A marked limitation is defined as a serious limitation, but it is not a total inability to function. Eagan v. Comm'r of Soc. Sec., No. 1:18-CV-1428-DB, 2020 WL 1853465, at *6–7 (W.D.N.Y. Apr. 13, 2020) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 12.00(F)(2)(d),(e)). See also Fiducia v. Comm'r of Soc. Sec., No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (marked limitation in interacting with others does not establish that the claimant is disabled, particularly because the ALJ limited the claimant to occasional interaction with others).

26.     Courts have found that marked limitations in interacting with supervisors can be accommodated by a limitation to occasional contact with them. See, e.g., Jackson B. v. Kijakazi, No. 20-CV-495F, 2021 WL 4225652, at *6 (W.D.N.Y. Sept. 16, 2021) (ALJ accounted for moderate limitation in appropriately dealing with stress, and marked limitation in adequately relating with others by limiting plaintiff to simple, repetitive work tasks involving no interaction with the public, occasional interaction with supervisors and co-workers, simple work-related decisions, and simple changes to work routine); Eagan,

2020 WL 1853465, at *6–7 (ALJ accounted for marked social limitations by limiting plaintiff to no public contact and only occasional contact with co-workers and supervisors); Davis v. Comm'r of Soc. Sec., 17-CV-6804P, 2019 WL 1870814, at * 4 (W.D.N.Y. Apr. 26, 2019) (ALJ accounted for plaintiff's marked limitation in interacting with others by limiting work to occasional interaction with others). Here, the ALJ clearly considered Plaintiff's limitations in her ability to deal with others, discussing her medical and interpersonal history in detail. This Court finds that the ALJ adequately accommodated Plaintiff's limitations in dealing with others by limiting her to no more than superficial interaction with the public, no more than occasional interaction with coworkers, and no more than occasional supervision.

27.     Plaintiff also argues that the RFC does not reflect her limited ability to deal with stress. "[W]hen determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" Thomas W. v. Comm'r of Soc. Sec., No. 20-CV-1010MWP, 2021 WL 3513840, at *3–5 (W.D.N.Y. Aug. 10, 2021) (quoting Reyes v. Colvin, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting Social Security Ruling "SSR" 85-15, 1985 WL 56857, *4 (1985)). "[E]ven without explicitly referencing a stress limitation, [however,] an RFC determination may adequately account for a claimant's stress-related limitations." Id. (quoting Herb v. Comm'r of Soc. Sec., 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019)). "For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the

public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." Id. (collecting cases).

28.    Dr. Brownfeld opined in 2016 that Plaintiff was markedly limited in appropriately dealing with stress. (R. at 621.) But the ALJ clearly accounted for this by limiting Plaintiff to simple, routine tasks with little variation and no need to make complicated decisions, and by limiting her interactions with others. (R. at 15.)  Even without an explicit discussion of the issue of stress, this Court finds that the ALJ adequately accounted for Plaintiff's limited ability to deal with stress with these accommodations.

29.    Finally, Plaintiff argues that the ALJ's finding that she would be off task 10% of the time is arbitrary and not grounded in the record. Courts have rejected such specific percentage findings where they are unsupported by the record. See, e.g., Cosnyka v. Colvin, 576 F. App'x. 43, 46 (2d Cir. 2014) (holding that there was no evidentiary basis for the ALJ's conclusion that an applicant needed only six-minutes off per hour); Mariani v. Colvin, 567 F. App'x. 8, 10 (2d Cir. 2014) (holding that there was not substantial evidence in the record supporting the ALJ's conclusion that an applicant could use his hand fifty-percent of the time). But where a limitation is supported by the record, it is not error to assign a particular percentage range to illustrate that limitation. Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0–10%) to illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").

30.    Here, the ALJ considered the entire record and found that, although examinations revealed that Plaintiff's attention and concentration were intact, the record

also revealed that she had difficulty concentrating. The ALJ found that Plaintiff was moderately limited in the domain of concentrating, persisting, and maintaining pace. (R. at 14.)  The ALJ then accounted for this limitation by finding that Plaintiff would be off-task up to 10% of the time. (R. at 15.) The ALJ was entitled "to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). As the ALJ explained in his opinion, his RFC assessment took account of Plaintiff's improvement over time, her work history[4], and medical findings that she was no more than moderately limited in attention. (R. at 16.) This Court finds no error in the ALJ's assignment of a percentage to reflect that limitation.

31.    Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

---

[4] Although the ALJ found that Plaintiff had no past relevant work, the record shows that she reported working on a relative's farm and as a housekeeper at various times. (R. at 58

SO ORDERED.


Dated:      May 26, 2022
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                    United States District Judge